May it please the Court, Peter Hawks of the Angeli Law Group on behalf of Appellant People for the Ethical Treatment of Animals. In this case, plaintiffs seek to enjoin the disclosure of the mere fact of their official service on a governing body of a public agency, a fact that, with respect to plaintiffs individually, has already been disclosed to PETA. Counsel, before we get into the merits, is there anyone here on the plaintiff's side withstanding? Your Honor, no, there isn't. We have two plaintiffs in this case. We have Dr. Sullivan, and we have a person who's proceeding anonymously under the pseudonym PPO-1. Okay, so then what if Sullivan doesn't have standing, and the District Court hasn't addressed whether PPO has standing? Then why shouldn't we just vacate and remand with instructions for the Court to address standing of PPO? Well, the standing of PPO-1 can already be determined from the record that we have now, because what the record shows is that PETA previously, through prior litigation and prior public records requests, obtained the names of the members of the UW IACUC back in March of 2021. Now, PPO-1 has submitted a declaration in this case in February of 2022, where they said that they had been serving on the IACUC for several years at that point. So, as a matter of logic, that PPO-1's name must have been on the list of— Well, that's not necessarily correct. Not everybody was disclosed, right? Not everybody was disclosed. All then-current members of the IACUC were disclosed. The ones that we still don't know are the people who have been added since that period of time. That's the disclosure. Correct. So, let's assume that either, as a matter of fact, given the several years that PPO-1 puts in his or her declaration, would say they would have been within the original disclosure. If we could determine that from the record, then the case would be dismissed? That's correct, Your Honor. I think the court would then have to remand with instructions to dismiss under the Learbo case. Although, alternatively, if we thought there was some ambiguity, we could remand with instructions to make a determination in light of these facts. Correct? Potentially, Your Honor, although they've already had their opportunity now, you know, under safe air for everyone, it is the plaintiff's burden to establish their standing. We submitted evidence suggesting that PPO-1 did not have standing. All PPO-1 would have had to do was submit another declaration saying, hey, my name's not on that list. They didn't do that. And I think that tells us everything that we need to know about whether they are on that list. I want to ask you a practical question, and that is, obviously, members of the committee are concerned about harassment. And they've given some examples, which may not be personal to them, but that they either know about or have heard about. Has there been any effort on your part to couple the disclosure with an agreement that there would not be harassment? I'm not quite sure what that would look like. I don't know what it would look like, but as a practical matter, I mean, that's one of the concerns. I mean, the University of Washington says, well, whatever, you know, we disclosed these once, and this isn't our fight, so to speak. But as a practical matter, there lurks out there this question of potential harassment. So I'm just asking you if that's ever been considered as to how to mitigate that. I don't think that's ever been discussed by the parties, to my recollection. Okay. And as we've explained, the reasons, you know, PETA's explained the reasons that it's seeking this information. It's trying to determine if these newly added members who have been designated as either unaffiliated or non-scientist members of the UWI could, in fact, meet those criteria. Obviously, it is unable to do that if it does not know who they are. So that's the purpose, as we've repeatedly explained. The purpose is not to target anyone for harassment, although to the extent that this is information that is required to be disclosed because it is publicly available information that's subject to the PRA, what PETA does with that information thereafter is really kind of irrelevant. So let's take one plaintiff. What's Sullivan? But I don't see how Sullivan could take any action that would be instrumental in affecting the committee because the committee is a creature of the state, right? That's correct, Your Honor. And that's the point that we've made is that the interests that Dr. Sullivan has articulated as the basis for her standing are really the institutional interests of the higher court. Okay, so if Sullivan doesn't have standing, then you have the question of the other plaintiff. There's only one named plaintiff. Right. There's a class waiting in the wings, but it's not certified. Why couldn't we just vacate and remand to the district court with instructions to dismiss Sullivan and to hold such proceedings as are appropriate to determine if the other plaintiff has standing? Well, again, on the record that we have now, we can already tell that PEPA 1 doesn't have standing. We can certainly tell that under safe air for everyone. Right, but why should our court reach out ahead of the district court to decide? PEPA doesn't have standing. And coupled with that, of course, the district court focused on Ms. Sullivan. That's correct. And not PEPA 1. Right. Well, the district court focused on two things, Dr. Sullivan, and also the absent putative class members who are obviously not parties to the case and can't confer standing on anyone because, as Your Honor pointed out, there's been no class certified. But the only real option here, again, under the Learboat case, makes it clear, that was a case where a class had been certified, but it was then determined that the named plaintiff lacked standing. And the court said, we don't even need to get to whether the certification issue was correct or not because this plaintiff lacked standing from the beginning at the time that the case was filed. And so what the court did was remanded with instructions to dismiss the case. And I think that that is exactly. That's what you're asking us to do. Exactly, Your Honor. Right. Maybe we should hear from PEPA 1 and the university to figure out where we are on that. Yeah. So assuming we can get past the standing issues, there are other problems with. Well, before we get past standing, I want to talk about Sullivan. All right. So you called it a creature of state law. But this thing is, this committee is created as a mandate from federal law. So this is kind of a hybrid, it seems to me. It's not necessarily, I mean, it's appointed by the university, but it's only in that sense. In fact, I haven't, I don't think, I'm not aware, and I looked, I didn't find any statute or regulation going to how this committee is created under state law. But I do know we have the federal statutory scheme that mandates that the university put this committee together. So it's not clear to me if this is actually a creature of state law. But that's, can you respond? Is it a federal entity or a state entity or some mix of both? Well, it exists pursuant to federal law because federal law requires it for anyone, whether you are a public or private entity, if you accept federal funds to conduct animal experimentation, you must have one of these committees. So it exists pursuant to federal legal requirements. But it is a state entity because it is an organ of the University of Washington, which is a state entity. Well, yeah, okay. I understand the argument, and it may be right. Tell me also about Sullivan. So she says that I can't, my ability to select members of this committee is hampered because no one, if this information is disclosed, I have to recruit members, and I can't do it. So this is what Sullivan says, right, I can't recruit members. So that, in fact, is I'm injured, I will be injured by this, by the release of this information because it will then dissuade other future applicants or prospective members from joining this committee. So it seems to me that is injury in fact. But your argument as well, as I understand your argument on standing, is that the Attorney General, this is a statute that says only the Attorney General can bring an action on behalf of the university, and this is a university entity. But what about 540? Doesn't 540, which is a page, I'm going to go to it, it's in the statutory excerpts on page 33. But 540, isn't this an exception to this Attorney General provision? I mean, it says the examination of any specific record may be enjoined upon motion or affidavit by an agency or its representative. Doesn't, that specifically authorizes somebody in the agency to bring this kind of action. So why doesn't this defeat the Attorney General's, your argument based upon the Attorney General, is more specific, it's an exception, if you will. Yeah. So, first of all, that provision is a matter of statutory standing. It's not a matter of Article III standing. I think we have to distinguish between those two things. I understand. But you're saying Article III standing is defeated by the statute that gives the Attorney General. That's your whole standing argument as to Sullivan, right, as to her. You're saying that, so we have to look at these statutes. We just can't look at one statute. We've got to look at both statutes. Sure. Right? But as we've argued, they also lack statutory standing. And I'll explain to you why, because for Sullivan to have standing, she's got to be able to show that the records specifically pertain to her. Now, just because she's the chair of the IACUC does not mean that every record that pertains to the IACUC specifically pertains to her. Well, it does pertain to her. Her name's on the list. Her name is on the list. So that might give her a right to enjoin the specific letter. But we already know her. We know her identity. Right. But she's still damaged. She's damaged in this other sense, right? She's damaged in the sense that she can't — it's going to — her ability to attract and recruit members of the committee is damaged by the release of the — by — if this release happens, or any further release happens. That's not personal damage to her. That is damage — that is alleged damage to the institution. She's asserting the institutional interest in — But there's no — this — I don't see why — I don't read this. I think this 540 is — you know, you can read it to say that it also encompasses — it's not clear. I mean, that's limited to her — to that injury that's to her particularly in the capacity of my personal information. But she's going to be damaged in her capacity as chair because I'm not going to be able to recruit members if we have these releases. But, again, that's an institutional interest that it's up to the University of Washington to vindicate. Well, but that's — that's circular. But that — I mean, we have two statutes we have to read together. That's our problem here. If all we had was the attorney — the statute authorizing the attorney general to represent the universities, I'd see your point. But this is — the problem is we have to read these two things together. And this seems to me, arguably at least, as an exception to that general principle, if you will, that the attorney general has to represent the university. But the statutes can be readily reconciled without — without doing that because the — under 540, there's two groups that can challenge the release of records or see to enjoin the release of records. One is the agency itself, right? That's UW. Right. And then the individuals whose records they specifically pertain to. And so the agency is there to protect the — its own institutional interests. Right. And the individuals to whom the records specifically pertain are — they can challenge it to protect their own individual personal interests in those records. But they can't assert someone else's. Do you want to reserve your time? I'll reserve the last minute, Your Honor. Thank you. Good afternoon. May it please the Court. Darwin Roberts for Dr. Sullivan and the currently anonymous committee members. I believe PETA has the standing analysis completely wrong here. And I want to make clear to the Court, this case will not be resolved ultimately on a standing basis because the anonymity of the committee members is the entire point. If there were not anonymous committee members withstanding, there would be nothing for PETA to seek in this case. That is precisely the information that they're after. So ultimately, as they concede in their briefing, there will be someone withstanding before the district court. Right. But it might not be this individual. It might not be. So that's kind of an irrelevant point. There could be somebody withstanding, you know, Jane, John Doe, number 2345. It's going to be PPO number 5, Your Honor, as counsel is aware, because we've already shown them the draft complaint that would add them. But that doesn't help us. The question here is, let's go to PPO 1, whether that individual has standing here. Because that's the only one in front of us apart from Dr. Sullivan, correct? Right. If the court finds that PPO 1 does not have standing, then the case should be remanded if Dr. Sullivan doesn't actually have standing. But I think it's absolutely the case that Dr. Sullivan has standing as well. All I'm saying is counsel is well aware that there's a PPO 5 who's ready to be amended in. And I'm a little bit amused by counsel's heavy reliance on LIRBO, which is a case that we cited. And we cited to point out that the First Circuit at least has pointed out that LIRBO is possibly questionable when read against Sierra Club v. Morton, which says that dismissal is not required in that case if the plaintiffs can amend under Rule 15. And that's what we would be seeking to do. Correct. I have a little familiarity with Sierra Club v. Morton there. Yes, Your Honor. Definitely the Supreme Court. It went back to the district court. They got a person, and they had standing. So the question here, though, with respect to Dr. Sullivan is her identity has been disclosed, so the interest she's asserting is an institutional one, correct? Correct. The committee. Well, it's a personal interest and an institutional interest. I think it's important to remember here this is a volunteer committee, right? PETA mischaracterizes it as a governing body. The University of Washington does not believe it's a governing body. That's in their brief. It's a volunteer compliance committee. I will have to ask them. Could it sue independently? I just don't think that issue is before the court, Your Honor. I doubt it. The Attorney General would probably be hopping up at that suggestion. So the question for Dr. Sullivan is, you know, why isn't it kind of like the Yonkers case in the Park Board? Well, Your Honor, I think the Yonkers case is a bad analogy because there it was the equivalent of the University of Washington. It would be as if the University of Washington shoved Dr. Sullivan forward and said, here, we don't want to do this ourselves. You do this for us. But that's precisely not what is happening here. I am sitting next to counsel for the defendant who we sued. The University of Washington said, we will release these records unless restrained. And there's a very important point about how the Public Records Act works in practice, which we discuss in a footnote at page 34 of our brief. It's footnote 4. But as PETA brings up this official versus unofficial conduct argument, it becomes more important, which is that when a State agency resists disclosure, even if it's debatable, if they take that to court and lose, they're going to owe attorneys fees and costs and possibly penalties. I know that because they've paid a lot of fees over time. Right, exactly. But at this point, they said, we are turning these documents over unless the court tells us not to. Right. So I don't quite get the import of your argument because that doesn't necessarily translate into, and Dr. Sullivan has standing. Because in debatable cases, Your Honor, they take a hands-off approach. They say, we're not even going to try to litigate whether there's an applicable exemption, throw it over to the individuals. And what they did in this case is they notified the individuals saying, we're not opposing release. The public records statute, as Judge Baker pointed out, allows you to oppose release. If you want to oppose release, if you think there's a reason for that, you should go do that. And that's why we're here. My question goes then to PPO 1. It seems that there's kind of some potentially sly pleading here. And I don't mean to suggest that there's anything disingenuous. But PPO 1 has been a member of the committee for several years. He or she or they said in February 2022. In March 2021, all members of that committee had been disclosed. The current members of the committee had been disclosed. So it seems to me we have two options here. One is to say by the very interpretation of that affidavit, PPO 1 has already been disclosed. Or that it would need to go back to the district court because the court didn't focus on that aspect. So what is your position on that? Our position is it should go back to the district court because the district court didn't focus on that. Okay. So tell me what your interpretation, though, is of this evidence that we have in front of us. You concede? PPO 1 could have said, I haven't been disclosed. Do you concede that P1 has already been disclosed? I would prefer not to concede that, Your Honor. I think PETA is trying to trap us between a scylla and charisma. Do you concede or not? I understand you would prefer not to, but that's not the question. I mean, it just seems kind of silly. We're having this, like, hypothetical, philosophical argument on PPO 1, who's probably been disclosed. But that doesn't mean you couldn't necessarily substitute. I mean, do you concede? I know you don't want to answer the question, but I'm going to re-ask the question. Do you concede that P1's identity has been disclosed? I would prefer to rest on the fact that there hasn't been a factual finding on that point by the district court. So you'd want us to remand? But we could make that. We don't have to make a finding. We could just say the record reflects. Is there anything in the record that says that P1 has not been disclosed or that would suggest that P1 has not been disclosed? Anything that cuts against the evidence that your colleague pointed to? I do not believe I have a factual citation for that point, Your Honor. Okay. If I may continue as to Dr. Sullivan's standing, though, I would be happy to answer the Court's questions as to other issues. I just want to make the point here. The standing cases involving generalized grievances versus personal harm, I think when you actually read them, they read very carefully or very closely in favor of Dr. Sullivan's standing here. If you take Thomas V. Mundell, for instance, which PETA cited in their reply brief, it emphasizes that it's a spectrum between, you know, a plaintiff normally does not have standing where the only asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens. That is absolutely not Dr. Sullivan's situation here. She is in a unique position. She is the only person. That's really undisputed. I mean, you clearly have shown that she's suffering injury in the sense that she can't recruit members. That's already been shown because of the threat of this. But that's not really the problem. The problem, as your friend keeps pointing out, is that, look, we've got this statute that says only the attorney general, and I'm going to hear from them next, can bring claims on behalf of the university. So that's why you – why doesn't that deprive you of standing? Well, the silence from the attorney general on this issue, Your Honor, is deafening. I mean, if the attorney general weren't here, that might be something. But the fact that the UW is represented by the attorney general and the attorney general has never said, you know, hey, we also think you don't have authority to bring this statute. Right, but jurisdiction can't be conferred by consent or by waiver or whatever. I just need to know. What is your – this is the crux of the problem, right, is that we have this statute that says only the attorney general can bring actions on behalf of the university. This committee is part of the university, isn't it? Right, but why is this case happening? It's because of the disclosure of the documents. And the case is brought under the code section you were citing before, Your Honor, RCW 4256540. It's authorized under that statute. Is that an exception to the – is that an exception, statutory exception to the general rule that the attorney general has to bring actions on behalf of the university? It gives Dr. Sullivan and any other members of the committee standing to move to enjoin the disclosure under the PRA. And that's separate from the Article III standing inquiry. But because they don't have a generalized grievance, you know, they have a particular harm that they're articulating. Right, but – You know, they are going to suffer harassment. Like, they don't sit in their offices and actually – It's not they. I'm sorry? We have one person here. Sullivan. We have Dr. Sullivan. Well, representing the interests of a class. No, no, she – we have no class yet. We have – Of a putative class. We have a putative class with two plaintiffs that we're examining. We've dispatched the argument, not necessarily the decision, on People 1. Yeah. But with respect to Dr. Sullivan, her interest is an institutional interest about recruitment. Correct? For the committee. For which she is a volunteer. What does that matter? I think it's indicative she's spending her personal time in order to do this. Well, she may have a personal interest in being able to do her job. Right? I mean, there are cases out there saying that government officials can have – in their private and personal capacity can have an interest in performing their governmental function. Legislators who somehow they're – I mean, in the cases where legislative standing has been recognized. So it's – what I'm getting at and what concerns me is that we have two statutes. Your opponent is saying that Article III standing is defeated by this attorney general statute authorizing this – only the states represent the university. But here I've got another statute that appears to say that, well, in fact, she can bring this. It seems to me if you have to put the two together and see what you end up with. An agency? Is this an agency? I would guess not. No. Okay. No, because then she would be subject to fees and penalties if she lost the case. Right. And she's not. Exactly. Right. So anyway, I think we have your point in mind. One more point, Your Honor, if you don't mind, to your question about has there been any consideration of whether some way to minimize harassment could be found if these records were released. I think PETA's reply brief at page 15 lets the mask slip a little bit on that point in which PETA says, plaintiffs are invoking their right to personal security not to protect themselves from a genuine threat of physical harm, which is not the standard, by the way. It is not under In re Crawford, but rather to prevent people with whom they disagree from speaking to them outside of the context of an IACUCS meeting public comment period. Gee, I thought PETA was conducting, you know, a credentials check. Apparently as a result of PETA's request – I think you got your point. That was not the inquiry that I made. The inquiry was whether there had been any specific efforts. And so I think the answer is no. I think this is representative of what PETA's actual goals are. Thank you. Thank you, Your Honors. Good morning, Your Honors. My name is Emma Grunberg. I represent the University of Washington and Ms. Saunders. I'd like to quickly give the university's position on a couple of points, although I see you're – I'd really like you to address this interplay between 540 and the Attorney General authorization statute. I'd like to understand how these interact. Well, the university has not taken a position on standing in this case. When the university gets a public records request, it is limited by state law on the PRA that it can only assert exemptions based on the four corners of the document. And obviously if it goes beyond that and withholds records beyond those four corners, it's subject to significant legal penalties. So we take those obligations seriously. There is also this provision under 540 that agencies can provide notice to persons named in documents that will allow them to assert interests that are beyond those four corners of the document, whether that is the interest that Dr. Sullivan has asserted or, you know, facts about harassment, that the university is just not in a position to litigate on behalf of these individuals. Is ICAC an agency? I don't think that IACUC is a separate agency that could assume. The University of Washington is the agency here. Yes, that's my understanding, yes. I just wanted to make sure I understood that. Yes, and that is true, that the University of Washington has not separately moved under 540 for nondisclosure of the record based on damage to vital governmental functions. We provided notice to the persons named that, you know, that we plan to disclose and that they could, you know, proceed accordingly. So ICAC couldn't bring its own suit without the Attorney General's consent, in other words? I don't think. Certainly under the PRA, the agency is the University of Washington, not IACUC. My understanding is that IACUC could not bring its own lawsuit. But it's very common under the Public Records Act for persons named in these records to bring lawsuits based on facts outside of the four corners of the document that the agency— You don't take a position on whether Dr. Sullivan can assert a university IACUC institutional interest? We have not taken a position on standing. In terms of whether Dr. Sullivan has shown that examination would not be in the public interest, would substantially damage her, would substantially damage government functions, you know, we haven't taken a position on whether she's made that showing. Well, the question I'm asking is, does she have authority to make that showing? Or is that authority that derives from the university, which must be represented by the Attorney General? Your Honor, I don't think that her arguments about her ability to recruit and those type of things would need to be made by the Attorney General. I don't see that from the face of the statute. That's not our position. I would like to just—and we have not taken a position on standing. We have not taken a position on the merits of plaintiffs' claims of constitutional exemptions under the PRA. We'll, of course, comply with any court orders concerning our obligations under the PRA. With regard to the anti-harassment statute for animal researchers, although we believe that statute is constitutional, obviously standing is a threshold issue. But if the court reaches the merits, we don't believe that the court should reach the issue of the constitutionality of RCW 424-580 on this interlocutory appeal. It's not properly before the court. The district court's injunction was based solely on the plaintiff's claims to constitutional exemptions based on privacy, et cetera. It didn't issue an injunction on the basis of the statute. And under the court's precedent, preliminary injunction orders are subject to a limited scope of review on appeal. And I would point the court to the case Peta Cites on Reply, Big Country Foods, which really discusses this issue about interlocutory PI appeals not being the basis to resolve outstanding legal issues in the case that aren't a subject of the order on review. So we would ask that whether the statute is constitutional, is premature, and runs contrary to the principle, the court should wait for concrete facts to develop before embarking on that adjudication. And we would ask that the court confine its review to standing and the issues raised on the order on appeal. Thank you. Okay, thank you. Counsel, I think... Just briefly, Your Honor. Time up. I'm sorry? You used all your time. I'll give you two minutes. I think he has a little bit. Thank you, Your Honor. Getting back to this issue, to Judge Baker's concern about the interplay between 540 and the attorney general authorization statute, I think the easy answer to that question is in the end it doesn't really matter because there's a mismatch between the institutional interest that Dr. Sullivan asserts and the actual claims that are asserted in this case, and the ones that provide the basis for the preliminary injunction that was issued. These are personal interests of the allegedly anonymous IACUC members, right? These are the interest in personal security and bodily integrity, the interest in informational privacy, the interest in avoiding harassment under the anti-harassment statute. But she says, I can't get people to even be on my committee because you're going to... Right. So she needs to find another exemption to work under. But the interest that she's attempting to assert in this case are the personal interests of the absent IACUC members. So the only way to... No, she's asserting her interest in her interest is recruiting. And that injury is redressed by an order, by the district court's order, preventing the disclosure. So that's the response to your point on this, right? The disclosure that is prevented by this district court injunction redresses the injury for which she has said she's... And it's clearly she's injured. The only question is whether or not she's got standing because of this. Does the statute by the Attorney General authorizing only the AG to sue, does that take away her standing? But I don't see how you can rely on that and just ignore 540. The issue that she has is that if she's standing in the shoes of the IACUC, and let's say she can assert the IACUC's institutional interests, there's... Doesn't she have an interest in doing her job? She's got a personal interest in doing her job. She doesn't have a personal interest. Her interest is in her official capacity as the IACUC chair. So it's not a personal interest of hers. It's in her official capacity. But the Stat 540 says a person named in the record of whom it applies finds that the examination, the court finds that the examination would not be in the public interest and would substantially and irreparably damage vital government functions. So she's saying, I'm going to be injured personally. That's the standing. But then it's going to, and the district court said it's going to substantially and damage government functions because she can't recruit people for this. Again, the records don't specifically pertain to her. That's the other problem that she has. So at the end of the day... Well, they do pertain to her because she's named. It's been disclosed. In a literal sense, she's... In the one letter that has her name in it, yes. But not in all of the other ones. So I'm over my time, so I will have to end it there. I'm sorry for taking up more of your time. Oh, it's okay. If you want to give him some more, that's fine with me. Judge Gould. I think we got your argument in mind. Yeah. Thank you, Your Honor. Thank you. Thank you. Thank you. I think that concludes this argument. Sullivan can now be submitted. And that concludes our arguments for today. Okay. All rise. This court for this session stands adjourned.
judges: McKEOWN, GOULD, Baker